1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROBERT W. BAKER, JR., individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>JOEL M. ARNOLD, et al.,<br><br>                Defendants. | Case Number C 03-05642 JF<br><br>**ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND DENYING OTHER MOTIONS HEARD ON APRIL 12, 2004**<br><br>[Docket Nos. 18, 29, 33, 37, 39, 45, 49, 55, 57, 60, 61, 68 & 88] |

On April 12, 2004, the Court heard argument regarding motions for consolidation of related securities class actions, for appointment of lead plaintiff and approval of lead plaintiff's counsel, for leave to take limited discovery, to strike a late-filed opposition, and for an order for preservation of documents and certification of preservation. The Court has read and considered the briefing submitted by the parties. For the reasons set forth below, the Court will consolidate the related actions, appoint Connecticut Retirement Plans and Trust Funds as lead plaintiff and deny all other motions.

//

## I. BACKGROUND

Before the Court are eleven related class action lawsuits asserting claims for securities fraud pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.   All of these cases have been transferred to this Court pursuant to its Related Case Order, dated March 3, 2004.[1]   The plaintiffs in each of these lawsuits allege that officers and directors of Redback Networks, Inc. ("Redback") made false and misleading statements to the investing public concerning Redback's financial condition and its relationship with Qwest Communications International, Inc.  Plaintiffs further allege that the statements caused members of the class to purchase Redback's securities at artificially inflated prices.

Several parties have moved for consolidation of the eleven actions.  Ten plaintiffs or groups of plaintiffs have filed competing motions for appointment as lead plaintiff and approval of lead plaintiff's counsel.  Additionally, there is (1) a request for leave to take limited discovery; (2) a request to strike a late-filed opposition to a motion for appointment as lead plaintiff; and (3) a motion for an order for preservation of documents relating to this litigation and certification that relevant documents or other information have not been knowingly destroyed, altered, or concealed.

## II. LEGAL STANDARD

Appointment of lead plaintiff in private securities class actions is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (codified at 15 U.S.C. §§ 77z-1, 77z-2, 78j-1, 78u-4, 78u-5).  The PSLRA provides that the Court shall resolve any motions to consolidate prior to considering the issue of appointing a lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  As soon as is practicable thereafter, the Court shall

---

[1] The eleven related actions are: *Baker v. Arnold, et al.*, C 03-05642 JF; *Stremple v. Arnold, et al.*, C 03-5799 JF; *Deutsch v. Arnold, et al.*, C 03-05870 JF; *Panzer v. Cronan, et al.*, C 04-00085 JF; *Grimes v. Cronan, et al.*, C 04-00190 JF; *Chermak v. Arnold, et al.*, C 04-00251 JF; *Gillis v. Arnold, et al.*, C 04-00280 JF; *Hansen v. Cronan, et al.*, C 04-00359 JF; *Hwang v. Arnold, et al.*, C 04-00568 JF; *Lederman v. Cronan, et al.*, C 04 00586 JF; and *Smajlaj v. Arnold, et al.*, C 04-00607 JF.

Case No. C 03-05642 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND DENYING OTHER
MOTIONS HEARD ON APRIL 12, 2004
(JFEX2)

1    appoint "the most adequate plaintiff" to act as lead plaintiff for the litigation.  *Id.* § 78u-

2    4(a)(3)(B)(ii).  The Court shall adopt a presumption that the most adequate plaintiff is the

3    plaintiff or group of plaintiffs that: (1) has either filed the complaint or made a motion in

4    response to a notice advising potential class members of the action; (2) has the largest financial

5    interest in the relief sought by the class; and (3) otherwise satisfies the adequacy and typicality

6    requirements of Federal Rule of Civil Procedure 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).   A

7    prima facie showing of adequacy and typicality is determined on the basis of the movant's

8    complaint, sworn certification, and other relevant submissions, without considering the

9    objections of other movants.  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  The

10   typicality requirement is satisfied when the movant has suffered the same injuries as the class as

11   a result of the same course of conduct, and has claims based on the same legal issues.  *See Hanon*

12   *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The adequacy requirement is satisfied

13   when the movants' interests coincide with those of the class, and when the movant has the ability

14   to prosecute the action vigorously through the services of competent counsel.  *See Armour v.*

15   *Network Associates, Inc.*, 171 F.Supp.2d 1044, 1052 (N.D. Cal. 2001).   The statutory

16   presumption in favor of a movant for lead plaintiff may be rebutted only upon proof that the

17   movant will not fairly and adequately protect the interests of the class, or is subject to unique

18   defenses which would prevent adequate representation of the class.  *See* 15 U.S.C. § 78u-

19   4(a)(3)(B)(iii)(II).

20

21                                    **III. DISCUSSION**

22   **A.      Consolidation**

23           All parties that have briefed the issue of consolidation agree that consolidation is

24   appropriate in this case.  All of the lawsuits are based upon a "fraud on the market" theory arising

25   out of the same alleged false and misleading statements.  Under these circumstances, the Court

26   concludes that consolidation of all the related actions will promote judicial efficiency.

27

28

                                          3

1  Accordingly, the Court will consolidate the actions pursuant to Federal Rule of Civil Procedure

2  42(a).

3      The Court has issued an Order Granting Motions to Consolidate Related Actions in

4  conjunction with this order.

5

6  **B.    Lead Plaintiff**

7      **1.    *Statutory Presumption***

8      The plaintiffs or groups of plaintiffs that have filed competing motions to be appointed

9  lead plaintiff are:  (1) the Cvitkovic Group; (2) the Connecticut Retirement Plans and Trust

10 Funds ("Connecticut Trust Funds"); (3) Richard Wimble; (4) David Garden; (5) Jerome Deutsch;

11 (6) Prena Smajlaj; (7) the Central States, Southeast and Southwest Areas Pension Fund ("Central

12 States"); (8) Tom Gordon; (9) the Bartnik Group; and (10) Nimish Patel and Stewart Richer (the

13 "Patel Group").  All movants satisfy the requirement of having filed a complaint or filed a timely

14 motion for appointment; however, the Bartnik Group has withdrawn its motion.

15     Two movants stand out by far as having the largest financial interest in the relief sought

16 by the class.  Central States claims a loss of approximately $3,997,563, while Connecticut Trust

17 Funds claims a loss of approximately $3,323,994.  Both movants suffered the same alleged

18 injuries as other class members as a result of the same alleged course of conduct by Defendants,

19 and their claims are based on the same legal issues.  Nothing in their submissions indicate that

20 their interests do not coincide with those of the class.  Moreover, both movants are sophisticated

21 institutional investors, the type of investors Congress anticipated and intended would serve as

22 lead plaintiffs, with the present ability to prosecute the action vigorously through the services of

23 competent counsel.  *See In re Cavanaugh*, 306 F.3d at 737.  Accordingly, the Court finds that

24 Central States and Connecticut Trust Funds satisfy the prima facie requirements for typicality and

25 adequacy.

26     The loss reported by Central States is challenged only by Connecticut Trust Funds, which

27 requests leave to take limited discovery of Central States in order to test the accuracy of Central

28

4

1    States' loss calculations.  Connecticut Trust Funds, however, proffers no reasonable basis

2    particular to the instant case as to why it believes Central States' claimed loss might be

3    overstated by as much as twenty percent, or $673,569, the amount by which Central States' loss

4    exceeds its own loss.  Central States has provided a schedule of its purchases and sales, historical

5    prices of Redback common stock, and its calculation of loss, yet there is no claim that the stock

6    prices on Central States' transaction schedule are inaccurate, or that its method of calculation is

7    otherwise incorrect or improper.  The Court therefore denies Connecticut Trust Funds' request

8    for leave to take limited discovery.

9          The two next highest claimed losses are substantially lower at $1,034,493 by the Patel

10   Group, and at $520,811 by the Bartnik Group.  The Court thus adopts the presumption that

11   Central States is the most adequate plaintiff to act as lead plaintiff.

12          **2.     *Rebuttal of Statutory Presumption***

13          Connecticut Trust Funds opposes Central State's motion for appointment as lead plaintiff.

14   Central States notes that Connecticut Trust Funds' opposition was filed one day late and thus

15   moves that it be stricken.  The Court in its discretion denies the motion and will consider

16   Connecticut Trust Funds' opposition, as it is in the best interest of all class members that the

17   most adequate plaintiff be identified.  Central States had sufficient time to file a reply, which the

18   Court has fully considered.  On the merits, the Court concludes that Connecticut Trust Funds

19   sufficiently rebuts Central States' prima facie showing of adequacy.

20          In its opposition, Connecticut Trust Funds points out that Central States has been

21   operating under a consent decree with the United States Department of Labor since 1982 arising

22   from allegations of mismanagement and corruption in the 1970s.  *See generally Chao v. Estate of*

23   *Fitzsimmons*, No. 78C 342, 78 C 4075, 82 C 7951, 2003 WL 22723424, at *1 (N.D. Ill. Nov. 18,

24   2003) (discussing the consent decree).  Connecticut Trust Funds makes reference to a recent

25   order from the District Court resolving a deadlock between the trustees appointed by employees

26   and the trustees appointed by employers relating to benefit reductions necessary to avoid an

27   annual funding deficiency which is projected to occur as early as this year.  *See id.* at *1-3.  Such

28

5

Case No. C 03-05642 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND DENYING OTHER
MOTIONS HEARD ON APRIL 12, 2004
(JFEX2)

funding deficiency would violate Section 302 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1082, as well as the express terms of the consent decree. *Id.* at *3. Connecticut Trust Funds argues that the projected funding deficiency will distract Central States from adequately representing the interests of the class. Central States asserts that some measures have already been taken to avoid a funding deficiency, citing macroeconomic factors that adversely affected every pension fund in the United States. Central States has not shown, however, that its financial circumstances have changed such that a funding deficiency is no longer imminent.

Connecticut Trust Funds also contends that the consent decree restricts the ability of Central State's trustees to make investment decisions and requires that an independent special counsel monitor and report on Central States' activities. Connecticut Trust Funds argues that because Central States is not even permitted to manage the assets and pension funds of its own beneficiaries independently, it should not be placed in a position to manage litigation impacting the entire class. Central States notes that the consent decree provides specifically that its trustees have responsibility for administering the fund. It also points out that the consent decree does not affect the right and authority of its trustees to seek lead plaintiff status. Although the consent decree does not preclude Central States from seeking lead plaintiff status, the Court is mindful of the fact that Central States remains under federal supervision as to its financial condition and is not entirely a "free agent" under circumstances in which a funding deficiency or other violations of the consent decree is imminent. The Court is concerned that the best interests of the class may not be served adequately by a lead plaintiff operating under such circumstances during settlement negotiations, which are a normal, if not universal, occurrence in securities class actions.

Finally, Connecticut Trust Funds contends that Central States has created a conflict of interest by designating the law firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg") to serve as lead plaintiff's counsel. Connecticut Trust Funds argues that the conflict arises from Milberg serving as lead counsel in the class action involving Redback's initial public offering, *In re Redback Networks, Inc. Initial Public Offering Sec. Litig.*, No. 01 Civ. 6090 (S.D. N.Y.) (the "IPO litigation"), which alleges that conduct by defendant underwriters created artificial demand

6

for Redback securities.  The class period of the IPO litigation of May 17, 1999 to December 6, 2000 overlaps with the instant class period of April 12, 2000 to October 1, 2003.  According to Connecticut Trust Funds, plaintiffs in the IPO litigation will seek to establish that the stock was inflated due to market manipulation by the defendant underwriters, while plaintiffs in the instant action will seek to establish that the inflation was due to Redback's false and misleading statements.

Central States contends that there would be such a conflict if only Milberg were to represent separate classes against overlapping defendants such that there would be a common fund from which the two classes seek recovery.  Central States points out that the only common defendant in the IPO litigation and the instant action is Dennis Barsema, and that because the claims against Barsema in the IPO litigation have been settled, there is no common fund from which both classes seek recovery.  It is unclear, however, that a conflict of interest arises only when there is a limited common fund or a common defendant.  *See* 5 J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 23.25[3][e] (2003).  The fact remains that Milberg is continuing to pursue claims against other defendants in the IPO litigation and thus, represents class members whose allegations conflict with those of the instant class.  It is more than a remote or hypothetical possibility that plaintiffs in the IPO litigation, through Milberg, would seek to prove that the stock was inflated primarily by the underwriters, while plaintiffs in the instant action would seek to prove that it was inflated primarily by Redback.   While the choice of counsel with a conflict of interest is only one indicator of a presumptive lead plaintiff's fitness, *see In re Cavanaugh*, 306 F.3d at 733, the Court concludes that the combination of the restrictions imposed on Central States by the consent decree, Central States' projected funding deficiency and consequent violation of the consent decree, and the selection of counsel with a non-trivial conflict of interest rebuts the presumption of Central States' adequacy.

The inquiry thus turns to Connecticut Trust Funds, the movant with the second-largest financial stake in the outcome of the lawsuit.  As previously noted, Connecticut Trust Funds is a sophisticated institutional investor with the present ability to prosecute the action vigorously through the services of competent counsel.  Other movants for appointment as lead plaintiff

7

present no challenge to Connecticut Trust Funds' prima facie showing of typicality and adequacy.  Accordingly, the Court concludes that Connecticut Trust Funds is the most adequate plaintiff.

## C.    Preservation of Documents and Certification

Central States moves for an order for preservation of documents relating to this litigation and for certification that the documents or other information has not been knowingly destroyed, altered, or concealed.  However, the PSLRA already provides that  "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . ."  15 U.S.C. § 78u-4(b)(3)(B).  This discovery stay has been construed by the Ninth Circuit to apply "not only during the pendency of a motion to dismiss, but until the Court has sustained the legal sufficiency of the complaint."  *In re JDS Uniphase Corp. Sec. Litig.*, 238 F.Supp.2d 1127, 1133 (N.D. Cal. 2002).  Further, the PSLRA requires that during the pendency of the discovery stay, the parties to the action "shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(b)(3)(C)(i).  Thus, although there is presently no motion to dismiss pending, the parties already are obligated under the PSLRA to preserve documents and other relevant information as the Court has not sustained the legal sufficiency of a consolidated complaint, which has yet to be filed.  The Court thus concludes that order to preserve documents is unwarranted.

Central States also seeks certification from defendants that documents and other information have not been knowingly destroyed, altered, or concealed.  However, Central States proffers no factual basis to indicate that Defendants will not comply with PSLRA's preservation provision, nor does it cite persuasive authority for its request.[2]  The PSLRA provides for other

---

[2] Central States points out that § 802 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1519, makes it a crime to knowingly destroy documents relevant to a federal investigation. Notwithstanding the fact that the instant case is a private securities action, Central States

8

means of ensuring compliance with its document preservation provision. Central States may move for particularized discovery if such discovery is necessary to preserve evidence or to prevent undue prejudice. 15 U.S.C. § 78u-4(b)(3)(B). Central States also may apply to the Court for an order awarding appropriate sanctions upon willful failure of Defendants to comply with preservation provision. *Id.* § 78u-4(b)(3)(C)(ii). Accordingly, the Court concludes that Central States' request for certification of preservation is unwarranted.

**IV. ORDER**

 Good cause therefore appearing, IT IS HEREBY ORDERED that:

(1)     The related actions are consolidated under Case No. 03-05642 JF for all purposes including trial pursuant to the Order Granting Motions to Consolidate Related Actions, issued in conjunction with this order; the docket in Case No. C 03-05642 JF shall constitute the Master Docket for this litigation;

(2)     Connecticut Retirement Plans and Trust Funds' motion for leave to take limited discovery as to Central States, Southeast and Southwest Areas Pension Fund's claimed loss is DENIED;

(3)     Central States, Southeast and Southwest Areas Pension Fund's motion to strike Connecticut Retirement Plans and Trust Funds' opposition is DENIED;

(4)     Connecticut Retirement Plans and Trust Funds is appointed Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(b);

(5)     Connecticut Retirement Plans and Trust Funds shall submit its selection of Lead Counsel for the Class to the Court pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v) within ten (10) days of this Order; and

---

contends that its request of certification is supported by the legislative history of § 802, which indicates a general desire to ensure more effective inquiries into securities fraud.

Case No. C 03-05642 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND DENYING OTHER
MOTIONS HEARD ON APRIL 12, 2004
(JFEX2)

1    (6)    Central States, Southeast and Southwest Areas Pension Fund's motion for and

2           order for preservation of relevant documents and certification that relevant

3           documents or other information has not been knowingly destroyed, altered, or

4           concealed is DENIED.

5

6    DATED:  May 17, 2004

7                                               /s/ electronic signature authorized
                                               JEREMY FOGEL
8                                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              10

1   Copies of this Order have been served on following persons:

2   Robert A. Jigarjian
    CAND.USCOURTS@CLASSCOUNSEL.COM

3
    Robert S. Green
4   CAND.USCOURTS@CLASSCOUNSEL.COM

5   John P. Stigi, III
    jstigi@wsgr.com

6
    Luke O. Brooks
7   lukeb@mwbhl.com

8   Marlon Quintanilla Paz
    mpaz@gelaw.com

9
    Marc L. Godino
10  service@secfraud.com

11  Betsy C. Manifold
    manifold@whafh.com

12
    Rachele R. Rickert
13  rickert@whafh.com

14  Darren J. Robbins
    DRobbins@mwbhl.com

15
    Kristin Anne Dillehay
16  kdillehay@wsgr.com

17  Michael M. Goldberg
    info@glancylaw.com

18
    Mark C. Gardy
19  Abbey Gardy, LLP
    212 East 39th Street
20  New York, NY 10016

21  Stuart M. Grant
    1201 N. Market Street
22  Suite 2100
    Wilmington, DE 19801

23
    Charles H. dufresne
24  Abbey Gardy, LLP
    212 East 39th Street
25  New York, NY 10016

26

27

28

                            11